2000 SD 72

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Cindy McVAY, Defendant and Appellant.**

No. 21059.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2000.

Decided June 7, 2000.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, for plaintiff and appellee.

Clifton E. Katz of Katz Law Office, Huron, for defendant and appellant.

### KONENKAMP, Justice

[¶ 1.] A jury convicted Cindy McVay of furnishing an alcoholic beverage to a minor and *contributing to the delinquency of a minor*. The minor was her son D.S. She was acquitted of the same charges involving J.L., her son's sixteen-year-old friend. We affirm.

### FACTS

[¶ 2.] During the early evening of October 16, 1998, J.L.'s mother picked him up at his grandparents' home and took him to the Country Bar in Alpena, South Dakota, where he met his friends D.S., A.V.O., and A.O. The four, all under the age of eigh-

1. This statute was amended by 1999 S.D. Sess.Law 188 and currently provides:
   It is a Class 1 misdemeanor to sell or give for use as a beverage any alcoholic bever-

teen, played pool and then decided to drive around.

[¶ 3.] J.L. and A.O. were in one car; D.S. and A.V.O. were in another. They communicated by cell phone and decided to find someone to buy alcohol for them. When their efforts proved unsuccessful they returned to the bar where D.S.'s mother, McVay, was celebrating her birthday.

[¶ 4.] D.S. entered the bar and asked his mother to buy some alcohol for the foursome. She bought him a liter of Lord Calvert. McVay and D.S. left the bar with the bottle and spoke to A.V.O. McVay then returned to the bar and the four minors left in their separate cars and drove through the rain.

[¶ 5.] As they were driving A.O., J.L., and D.S. were drinking. When they arrived at the Alpena water tower and eventually at the darkened football field, the three continued to drink. The testimony conflicted on whether the minors drank only beer, drank the whiskey McVay provided, and passed the liquor bottle between cars.

[¶ 6.] As a result of the evenings' events, J.L. became intoxicated and afraid to go home. His companions left him in a parked car. Later, a home owner found J.L. curled up in his front yard. His clothes were soaked and he had no shoes or coat. He was rushed to the Huron Regional Medical Center suffering from hypothermia.

### ISSUE ONE

[¶ 7.] **Were jury instructions 7 and 9 prejudicial to McVay?**

A. Instruction No. 7

[¶ 8.] McVay was charged with violating SDCL 35–9–1 [1] which, at the time, provided:

age to any person under the age of eighteen years unless:
(1) It is done in the immediate presence of a parent or guardian or spouse, who is

It is a Class 1 misdemeanor to sell or give for use as a beverage any alcoholic beverage to any person under the age of eighteen years unless it is done in the immediate presence of a parent or guardian or spouse over twenty-one years of age or by prescription or direction of a duly licensed practitioner or nurse of the healing arts for medicinal purposes.

[¶ 9.] Pursuant to this statute, the jury was given Instruction No. 7:

The "immediate presence of a parent" means that the parent must be present both at the time of the selling or giving of the alcoholic beverage to the minor and at the time of the possession or consumption of the alcoholic beverage by the minor. If a parent gives to her minor child an alcoholic beverage for use as an alcoholic beverage and then leaves the presence of the child, the parent has committed the crime of furnishing an alcoholic beverage to a person under the age of eighteen years.

[¶ 10.] McVay believes that the legislature intended to place the responsibility on parents to decide whether their child can have alcohol and when and where that alcohol is consumed. She contends that SDCL 35–9–1 only requires a parent's presence when alcohol is sold or given. The consumption of alcohol by a minor, she claims, can take place outside of the immediate presence of a parent.

[¶ 11.] In construing statutes:

Each statute must be construed according to its manifest intent as derived from the statute as a whole, as well as other enactments relating to the same subject. Words used by the legislature are presumed to convey their ordinary, popular meaning, unless the context or the legislature's apparent intention justifies departure. When conflicting stat-

utes appear, it is the responsibility of the court to give reasonable construction to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable. However, terms of a statute relating to a particular subject will prevail over general terms of another statute. Finally, we must assume that the legislature, in enacting a provision, had in mind previously enacted statues [sic] relating to the same subject. (citations omitted).

*Weger v. Pennington County,* 534 N.W.2d 854, 856 (S.D.1995).

[¶ 12.] Applying these rules clearly shows that the trial court correctly interpreted SDCL 35–9–1 and properly gave Instruction No. 7. The legislature has emphasized the importance of enforcing all laws relating to alcoholic beverages and the illegality of underage drinking. *See, Gleason v. Peters,* 1997 SD 102, 568 N.W.2d 482 (Sabers, J., dissenting.)

[¶ 13.] SDCL 35–9–1 generally prohibits the selling or giving for use (i.e. consumption) as a beverage, alcohol to persons under age eighteen. SDCL 35–9–1 provides two limited exceptions to this general rule. The relevant exception here is that the selling and giving for use of the alcohol as well as its consumption must be done in the immediate presence of a parent. The statute does not authorize parents to permit children to consume alcohol outside their presence. It only allows consumption by a minor where there is immediate parental supervision of that consumption.

### B. Instruction No. 9

[¶ 14.] McVay was charged with two counts of contributing to the delinquency of a minor. SDCL 26–9–1 provides:

Any person who, by any act, causes, encourages or contributes to the abuse,

at least twenty-one years of age, while not on the premises of an establishment licensed for the retail sale of alcoholic beverages pursuant to § 35–4–2 or at a special event for which an alcoholic bev-

erage license has been issued pursuant to § 35–4–11.4; or
(2) It is done by prescription or direction of a duly licensed practitioner or nurse of the healing arts for medicinal purposes.

the neglect or the delinquency of a child, or any person, other than a parent who, by any act, causes a child to become a child in need of supervision, as such phrases with reference to children are defined by chapters 26–7A, 26–8A, 26–8B and 26–8C, or who is, in any manner, responsible therefor, is guilty of a Class 1 misdemeanor.

To find a person guilty of SDCL 26–9–1 it is not necessary to prove the child is actually delinquent if the evidence shows "that through any act of abuse, neglect or omission of duty or by any improper act or conduct on the part of any such person the abuse, neglect or delinquency of any child may have been caused or merely encouraged." SDCL 26–9–6. These statutes are liberally construed in favor of the state to protect children from the improper conduct, acts, or bad example of persons which may be calculated to cause, encourage, or contribute to the delinquency of children. SDCL 26–9–7.

[¶ 15.] Instruction No. 9 was given to the jury:

2. These instructions were also given:
Instruction No. 8
    Any person who by any act, causes, encourages or contributes to the delinquency of a minor is guilty of a crime.
Instruction No. 10
    As to Count III, the elements of the crime of contributing to the delinquency of a minor, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:
        (1) That Cindy McVay by any act;
        (2) Caused, encouraged or contributed to the delinquency of [D.S.]; and
        (3) That [D.S.] is under eighteen years of age.
Instruction No. 11
    As to Count IV, the elements of the crime of contributing to the delinquency of a minor, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:
        (4) That Cindy McVay by any act;
        (5) Caused, encouraged or contributed to the delinquency of [J.L.]; and
        (6) That [J.L.] is under eighteen years of age.
Instruction No. 12
    An essential component of the crime of contributing to the delinquency of the mi-

It is a crime in the State of South Dakota for any person to have a package or any receptacle containing an alcoholic beverage in his possession in a motor vehicle unless the seal of the original package remains unbroken or the alcoholic beverage is so removed that no occupant of the motor vehicle shall have access to it while the vehicle is in motion. A minor who committed this crime would be a delinquent child under South Dakota law. Any person who caused, encouraged, or contributed to the commission of this crime by a minor would be contributing to the delinquency of a minor.

This instruction was a part of a series of instructions dealing with the crime of contributing to the delinquency of a minor.[2]

■ [¶ 16.] McVay contends that she should not have been convicted of contributing to the delinquency of a minor because Instruction No. 9 misstates the law. McVay does not object to the first sentence of Instruction No. 9 which properly

nor is the delinquency of that child as delinquency is defined in state law. However, in establishing the offense of contributing to the delinquency of a minor, it is not necessary to prove that the child actually became delinquent. It is sufficient if the evidence shows that the delinquency of the child may have been caused by an act of the defendant. It is also sufficient if the evidence shows that the delinquency of the child may have been merely encouraged by an act of the defendant.
Instruction No. 13
    Delinquent child means any child ten years of age or older who regardless of where the violation occurred, has violated any federal, state or local law or regulation for which there is a penalty of a criminal nature of an adult, except state or municipal hunting, fishing, boating, park, or traffic laws that are classified as misdmeanors [sic], or violations of § 35–9–2, or petty offenses.
Instruction No. 14
    §§ 35–9–2 prohibits a person under the age of twenty-one years from purchasing, attempting to purchase or possessing or consuming alcoholic beverages except when consumed in a religious ceremony and given to said person by an authorized person.

interprets SDCL 35-1-9.1 [3] as effective at that time:

It is a Class 2 misdemeanor for any person to have a package or any receptacle containing an alcoholic beverage in his possession in a motor vehicle unless the seal of the original package remains unbroken or the alcoholic beverage is so removed that no occupant of the motor vehicle shall have access to it while the vehicle is in motion.

[¶ 17.] McVay argues that she cannot be guilty of contributing to the delinquency of a minor because open container violations, SDCL 35-1-9.1, are traffic violations which are exempt from the definition of delinquent child:

In this chapter and chapter 26-7A, the term, delinquent child, means any child ten years of age or older who, regardless of where the violation occurred, has violated any federal, state or local law or regulation for which there is a penalty of a criminal nature for an adult, except state or municipal hunting, fishing, boating, park, or traffic laws that are classified as misdemeanors, or violations of § 35-9-2, or petty offenses.

SDCL 26-8C-2. She cites Op. Att'y Gen. 78-47 for the proposition that an open container violation is exempted from the definition of delinquent child because it is a traffic offense.

■ [¶ 18.] We need not decide if an open container violation is exempted from the definition of delinquent child since "[j]ury instructions are adequate when, considered as a whole, they give the full and correct statement of the law applicable to the case." *State v. Pellegrino*, 1998 SD 39, § 9, 577 N.W.2d 590, 594. Here the jury was given extensive instructions regarding contributing to the delinquency of

a minor. It was instructed that the elements of the crime included any act abusing, encouraging or contributing to the delinquency of a person under age 18. The act of furnishing alcohol to D.S. satisfies these elements. The final two sentences in Instruction No. 9 are merely surplusage and the error, if any, is harmless.

## ISSUE TWO

[¶ 19.]    **Is SDCL 35-9-1 unconstitutionally vague?**

■    [¶ 20.] At the time of McVay's arrest and trial SDCL 35-9-1 provided:

It is a Class 1 misdemeanor to sell or give for use as a beverage any alcoholic beverage to any person under the age of eighteen years unless it is done in the immediate presence of a parent or guardian or spouse over twenty-one years of age or by prescription or direction of a duly licensed practitioner or nurse of the healing arts for medicinal purposes.

McVay contends that if SDCL 35-9-1 is construed to require a parent to be present when alcohol is consumed, a person of ordinary intelligence would not have fair notice of the violation.

[¶ 21.] In *Lodermeier v. Class*, 1996 SD 134, § 18, 555 N.W.2d 618, 625 this Court reiterated:

A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give

3. SDCL 35-1-9.1 currently provides:

It is a Class 2 misdemeanor for any person occupying a motor vehicle located upon a public highway or the right-of-way of a public highway to consume any alcoholic beverage or have a package or any receptacle containing an alcoholic beverage in that person's possession unless the seal of the original package remains unbroken or the alcoholic beverage is so removed from the passenger area of the motor vehicle that no occupant of the motor vehicle has access to it.

1999 S.D. Sess.Law. ch. 184 § 1.

a person of ordinary intelligence fair notice [of what] conduct is forbidden. *State v. Hauge*, 1996 SD 48, ¶ 12, 547 N.W.2d 173, 177 (citations and quotations omitted).

* * *

Lodermeier must overcome a strong presumption of constitutionality:

> [T]he laws enacted by the legislature are [presumed] constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*Hauge*, 1996 SD 48, ¶ 4, 547 N.W.2d at 175 (citations and quotations omitted). Our review of SDCL 22–11–27 and the specific jury instructions explaining this statute do not convince us that Lodermeier has overcome his burden to show evident unconstitutional vagueness, or that he was deprived of his right to a fair trial.

[¶ 22.] As in *Lodermeier*, McVay has not overcome the burden of showing evident unconstitutional vagueness or that she was deprived of her right to a fair trial. The statute and the jury instructions explaining it clearly set forth what conduct is forbidden. The fact that McVay does not agree with the statute is of no matter.

### ISSUE THREE

[¶ 23.]   **Did the trial court err by ordering McVay to pay J.L.'s medical bills?**

[¶ 24.] At sentencing, the following occurred:

THE COURT: Is there any cause or reason why the Court should not pronounce sentence?

MR. KATZ: No.

THE COURT: On both charges, the furnishing of alcohol to a minor and the contributing to the delinquency of a minor, it will be the judgment and sentence of the Court that you pay a $500 fine, that you be confined in the Jerauld County Jail for a term and period of six months.

I will suspend five months of the jail sentence on both counts on the condition that you pay the fine and costs, including Court-appointed attorney's fees; that you pay restitution in the amount of $2,068.20; and the sentence on the remaining 60 days will run consecutively. Also that you obey all laws, state, federal, municipal, Indian jurisdictions for a period of two years.

Do you want to agree to those conditions, or do you want to do the six months? It would actually be twelve months consecutive.

THE DEFENDANT: I agree.

[¶ 25.] The judgment of conviction recited, in part,

> IT IS FURTHER ORDERED that five (5) months of each of the above-referenced jail terms shall be suspended upon the following terms and conditions:
>
> (1) That the Defendant shall pay the above-referenced fines and all of the costs of the action, including court-appointed attorney fees.
>
> (2) That the Defendant shall make restitution to [J.L.] in the amount of Two Thousand Sixty-eight Dollars and Twenty Cents ($2,068.20).
>
> (3) That the Defendant shall obey all laws of the United States of America, the State of South Dakota, and all political subdivisions and American Indian reservations thereof for a term and period of two (2) years.
>
> (4) That the Defendant shall serve the remaining thirty (30) days of each jail sentence consecutively.
>
> (5) That the Defendant shall be allowed work release.

[¶ 26.] McVay contends that the circuit court erred by ordering her to pay

J.L.'s medical bills. She contends that J.L. was not a victim of her crime, SDCL 23A–28–2(5), SDCL 22–1–2(31), and restitution was improper.

[¶ 27.] We resolved this issue in *Hafner v. Leapley*, 520 N.W.2d 252, 253–254 (S.D. 1994):

> Hafner contends the trial court had no authority to order him to pay $5,000 to Codington County as compensation for the county victim assistant. In so arguing, Hafner erroneously assumes the $5,000 was "restitution" governed by the restitution statutes found at SDCL ch. 23A–28. Hafner's assumption is erroneous because the $5,000 is not restitution, but rather, a condition attached to a suspended sentence.

SDCL 23A–27–18 provides:

> Upon conviction, the court having jurisdiction to try the offense may suspend the execution of any sentence imposed during good behavior, *subject to such conditions or restitutions as the court may impose.* The suspension order or judgment can be made only by the court in which the conviction occurred. (emphasis added).

The court's authority to impose conditions is limited only to the extent that the conditions must be reasonable and legal. *White Eagle v. State*, 280 N.W.2d 659 (S.D.1979).

[¶ 28.] "When a convicted criminal asks the court for grace, such as probation or a suspended sentence, the court may impose conditions upon that favor. SDCL 23A–27–18." *Id.* That is what happened in McVay's case. The ordering of payment of J.L.'s medical bills was reasonable, legal, and agreed to by McVay.

[¶ 29.] The judgment is affirmed.

[¶ 30.] SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 31.] MILLER, Chief Justice, concurs specially.

MILLER, Chief Justice (concurring specially).

[¶ 32.] I fully concur in the majority opinion.

[¶ 33.] The words that follow may seem harsh. However, after almost 40 years in the legal profession, nearly 30 of those as a judge, I've seen the deterioration of families, the loss of life, and the occurrence of other preventable tragedies that have been caused by the actions of irresponsible parents such as McVay.

[¶ 34.] I write specially to express my disgust for the despicable and illegal actions of this foolish, unthinking and irresponsible parent. Directly assisting her minor son and his friends in illegal, unsupervised alcohol consumption is appalling.

[¶ 35.] What could have ever possessed McVay, and what was she thinking, when she purchased a liter of hard liquor for D.S. and his young friends and then turned them loose on the town without thought or supervision? A boring Friday night, three teenage boys, one teenage girl, two cars and a liter of whiskey for entertainment: I cringe when I imagine what could have happened. She is lucky that no one died and that the only consequence of her stupid, irresponsible and illegal decision was J.L.'s severe intoxication and hypothermia.

[¶ 36.] McVay's blatant disrespect for the law clearly sanctions and probably fosters the same defiant attitude in her son. How is a young person like D.S. ever to learn or appreciate right from wrong when considering the horrible example set by a parent like McVay; someone who scoffs at the law and then has the audacity to challenge it when she is caught? McVay may consider herself a martyr for parents who want to show their children how to have a "good time." In reality, she appears to be an irresponsible parent woefully unqualified to impart societal values to her child.

[¶ 37.] The discouraging aspect of this case is that it was entirely preventable. Throughout my career, I've seen the dam-

age inflicted by the actions of parents like McVay who ignore their responsibility to set an example of right and wrong for our children. It is no wonder that so many of our kids are in trouble today!

[¶ 38.] Shame on you Ms. McVay!!